LOVE, SUPERINTENDENT OF BANKS, v. ROGERS.

(Division A.   April 4, 1932.)

[140 So. 696.   No. 29806.]

Flowers, Brown & Hester, of Jackson, for appellant.

W. C. Sweat, of Corinth, for appellee.

Cook, J., delivered the opinion of the court.

The appellee, W. Y. Rogers, filed his petition in the chancery court of Alcorn county against the Corinth Bank & Trust Company, in liquidation by the state banking department, seeking to establish a preference claim against the assets of said bank to pay an alleged special deposit of two thousand, five hundred dollars, and, from a decree granting such preference, this appeal was prosecuted by J. S. Love, state superintendent of banks.

The petition filed by the appellee alleged that a certain promissory note for the sum of two thousand, five hundred dollars, evidencing a loan made to the board of trustees of the Alcorn Agricultural High School, belonged to the appellee; that the money loaned to this school was from funds of the appellee, and that, since the bank had collected the amount of this note, the appellee was entitled to have the assets of said bank impressed with a trust for the payment to him of the amount so collected.

The material averments of fact set forth in the petition are as follows:

"Your petitioner further shows unto the court that, for many years prior to the closing of the said bank and at the time of the closing thereof, he was a large depositor of the said bank, having around eighteen thousand dollars to twenty thousand dollars on deposit therein, a large part of which was a savings account; that, on October 11, 1930, the board of trustees of the Alcorn Agricultural High School desired to borrow two thousand, five hundred dollars for the purpose of paying teachers and other expenses of said school in anticipation of taxes; and this petitioner with other members of the board of trustees, went to the Corinth Bank & Trust Company to borrow the said money and talked to the president of the bank about borrowing the two thousand, five hundred dollars until January 1, or until taxes could be collected; that the president of the bank informed the said board of trustees and this petitioner

that it would be unable to make said loan; that they then went to the First National Bank to borrow the said funds and the First National Bank was likewise unwilling to make said loan; and this petitioner, on prior occasions, had made loans to the board of trustees, but preferred not to make the loan to the said board of trustees at this time by reason of the fact that his funds were in the Corinth Bank and Trust Company on time deposit, and would not be due until about December 1st; and, if said funds were taken out, he would lose the interest; however, when the Corinth Bank and Trust Company declined to make the said loan and the First National Bank signified its unwillingness to make this loan, this petitioner decided that he would make the loan out of his own funds; that he thereupon went to the president of the Corinth Bank and Trust Company and advised the said president that, since his bank was unwilling to make the loan, he desired to make it, but inasmuch as petitioner's funds were on time deposit and would not be due until December 1 thereafter, this petitioner instructed the said president of the said bank to make the said loan of two thousand, five hundred dollars out of the funds of this petitioner; that it was thereupon agreed that the said bank would make the loan of two thousand, five hundred dollars out of the funds of the petitioner; that, inasmuch as the loan was to bear eight per cent interest, the bank would receive the eight per cent interest from that date until December 1, the date upon which petitioner's time deposit became due; that thereafter the note, or loan warrant issued by the board of trustees would be delivered to your petitioner, and that the same would be paid out of the funds of the petitioner.

"Your petitioner shows further that, under this agreement, the said loan was made, and the note or loan warrant executed to the Corinth Bank and Trust Company. But it was the understanding that the loan warrant would, in fact, be the warrant of this petitioner, with the under-

standing that the same will be held by the said Corinth Bank and Trust Company, and interest at eight per cent received thereon until about December 1; and that the money that was being loaned board of trustees was, in fact, the money of this petitioner, but that he would continue to receive four per cent thereon until December 1, and that the bank would receive eight per cent on the note until December 1, when the note would become the property of this petitioner.

"Your petitioner further shows unto the court that, as hereinabove stated, the said bank closed its doors prior to December 1, to-wit; on November 26, 1930, and this petitioner has requested of the liquidating agent of the said bank that he deliver to him the said two thousand, five hundred dollars loan warrant, and that this he declined to do, and your petitioner avers that, under the agreement aforesaid, the said loan warrant should be held by this court to be the property of this complainant, and interest thereon payable to him from December 1, and that the bank should have the interest thereon prior thereto; and, if the said loan warrant has been paid, the said liquidating agent should be directed to pay to this petitioner the said two thousand, five hundred dollars, with such interest as he has collected thereon from December 1; or, if this petitioner is mistaken in this, he avers that under the agreement and circumstances the two housand, five hundred dollars, which was on time deposit, became thereafter a special deposit for the sole and only purpose of taking up and paying for the said loan warrant on December 1, and that the same could not have been used by the bank, or by him thereafter, for any other purpose, and is entitled to be first paid to this petitioner by the liquidating agent out of the assets of the said bank."

Appellee, who was a member of the board of trustees of the Alcorn Agricultural High School, and another member of said board, testified that on October 11, 1930,

on behalf of said school, they applied to the Corinth Bank & Trust Company for a loan of two thousand, five hundred dollars in anticipation of taxes; that the president of the bank advised them that it did not have the money available to make the loan; that they then applied to the First National Bank of Corinth and were met with the same response; that they then returned to the Corinth Bank & Trust Company and requested its president to make the loan out of the money the appellee had on deposit in said bank, in the savings department, which was drawing interest at the rate of four per cent. per annum; that the president of the bank agreed to this arrangement and it was agreed that the bank would receive eight per cent. interest on the loan, and continue to pay to the appellee four per cent. on his savings account, without reduction, until the interest matured on December 31, 1930; and that the loan of two thousand, five hundred dollars was to be then turned over to the appellee, who would charge the school six per cent. interest thereon.

The bank loaned to the school two thousand, five hundred dollars and took as evidence thereof a note signed by the trustees of the school payable to the bank sixty days after date. A short time after the maturity of this note the school paid it to the liquidating agent of the bank.

F. F. Anderson, president of the Corinth Bank & Trust Company, testified that the appellee and another member of the board of trustees of the Alcorn Agricultural High School applied to him for a loan of two thousand, five hundred dollars for said school. He advised them that he could not very well make the loan, as the bank was using all its available funds in the movement of cotton; that, after making efforts to secure the loan elsewhere, the appellee, Rogers, returned to the bank and suggested that it would be for the best interest of the bank to make the loan; that, if made, and the school was not in a position to repay it when it matured, he (Rogers) would take

up the note when the interest on his savings account matured; that he explained to the appellee that, if the loan was made, it would have to be for a short time, and that, consequently, he made the loan for sixty days, and same was repaid by the school.

The court below, in a written opinion, held that the appellee failed to meet the burden of showing that it was specifically agreed that the loan should be made from his funds, and that the ''loan was made from his deposit and was in reality and in law his loan and the title to the loan vested immediately in him.'' He further held that the bank made the loan upon the understanding on its part that, if it was not paid when due, the appellee would then take up the note out of his deposit, and that the consummation of this arrangement constituted a setting aside of two thousand, five hundred dollars of the appellee's savings deposit as a specific deposit for the purpose of taking up this note, and that, consequently, the appellee was entitled to a preference payment of said sum out of the assets of the bank.

The chancellor's finding that the proof failed to show that the loan was made out of the funds of the appellee, or that he became vested with title to the note, is manifestly correct; but we think the court erred in holding that, by the arrangement consummated, there was created a special deposit of two thousand, five hundred dollars for the payment of this note. That the loan was made by the bank upon the moral assurance of the appellee that, if the school was not in a financial position to pay it when it matured, he would pay it, as testified to by the president of the bank, finds substantial support in the circumstances surrounding the transaction and the condition of the parties at the time. The record discloses that the appellee was a man of substantial means and a customer of the bank over a long period of time, who then had a large deposit in the bank upon which there was accrued interest, which he was unwilling to

sacrifice by changing or reducing the amount of the deposit before it became due and payable. On the other hand, the officers of the bank were reluctant to make the loan for the reason that all the available funds of the bank were needed for handling the daily movement of cotton which, at that season, was at its height. It finally agreed to and did make the loan for a short period of time upon the assurance that the appellee would repay it if the school was not in a position to do so when it became due.

The bank made the loan out of its general funds, and to hold that, by the arrangement under which it did so, there was withdrawn out of appellee's deposit, which was then a part of the general funds of the bank, an additional sum of two thousand, five hundred dollars to create a special deposit of that sum, would mean that the bank had agreed to and did withdraw from its limited funds available for its usual and normal functions the sum of five thousand dollars, and had loaned two thousand, five hundred dollars of that sum at an interest yield of four per cent. per annum. We do not think the evidence of the agreement between the parties warrants us in so holding. At the time the loan was made, and prior thereto, the relation of debtor and creditor existed between the bank and the appellee, and we see nothing in the agreement and the arrangement consummated, or the subsequent acts of the parties in reference to the loan or the repayment thereof, to change that relation.

Consequently, the decree of the count below will be reversed and the petition dismissed.

Reversed and petition dismissed.